FILED
2023 Aug-14  PM 03:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ANNA CLAIRE BATES AND JANE DOE** | ) | |
| | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| **v.** | ) | Case No.: |
| | ) | |
| **SEQUEL YOUTH AND FAMILY SERVICES,** | ) | **CLASS ACTION** |
| **LLC, SEQUEL TSI HOLDINGS, LLC,** | ) | |
| **SEQUEL TSI OF ALABAMA, LLC, AND** | ) | |
| **SEQUEL TSI OF AULDERN, LLC** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## COMPLAINT

1.   Parents and guardians of teens with behavioral problems, including child protective services, often find themselves desperately looking for professional help to curb their teen's risky and rebellious behavior.

2.   Sequel presented itself as a provider of top-notch professional care for teens with behavioral and emotional issues. Instead of providing such care, the for-profit, privately-owned Sequel took advantage of desperate parents and guardians seeking help, traumatized the teens in its care, and raked in millions doing it.

3.   Sequel operated behavioral health facilities in twenty (20) states for at-risk youth. Over time, several of Sequel's facilities have been closed because Sequel's staff abused and neglected the children.

4.   Sequel's business was so profitable because it used and exploited the children in its care as free labor. Instead of paying for adequate janitorial and groundskeeping services, Sequel forced the teens to provide these services without pay or risk serious reprisal.

5.  As part of its venture, Sequel abused Ms. Bates and Ms. Doe. Both Ms. Bates and Ms. Doe lived at a Sequel facility for some time during their teen years and were forced to work for no pay under threat of serious harm.[1]

6.  Further, Sequel staff members sexually assaulted Ms. Doe while she was in Sequel's care at one of its facilities in Alabama.

**I.**
**SUBJECT MATTER JURISDICTION AND VENUE**

7.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that claims asserted herein arise under the Trafficking Victims Protection Reauthorization Act (18 U.S.C. §§ 1589 *et seq.*) ("TVPRA").

8.  The Court has jurisdiction over Plaintiff Jane Doe's pendant state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction). Plaintiff Jane Doe's state law claims are a part of the same case or controversy as her federal claims.

9.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2). Because the Defendants were headquartered in the Northern District of Alabama at the time of the Plaintiffs' labor trafficking, a substantial part of the corporate policy decisions and/or omissions alleged herein occurred in this judicial district. For example, the Defendants unlawfully benefited financially in this district from the labor trafficking of the Plaintiffs and putative class members. The Defendants finalized their decisions on how to structure their venture and operate their facilities in this district, and the Defendants made budgetary decisions in this district.

10. Venue is also proper in this district pursuant to 18 U.S.C. § 2255 and 28 U.S.C. §§ 1391(b)(1) & (c)(2). Under 28 U.S.C. § 1391(b)(1), an action may be brought in "a judicial

---

[1]Both Ms. Bates and Ms. Doe were under the age of eighteen (18) when they were forced to work at a Sequel facility, and this Complaint has been brought within ten years of their eighteenth (18th) birthdays.

district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]" Under 28 U.S.C. § 1391(c)(2), "an entity with the capacity to sue and be sued in its common name under applicable law . . . shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction . . . ." This Court has personal jurisdiction over all of the Defendants with respect to this civil action based on 18 U.S.C. § 2255. As such, all of the Defendants are considered residents of the Northern District of Alabama, and venue is proper in this district.

11. Further, venue is proper under 28 U.S.C. § 1391(b)(3), which states that an action may be brought "if there is no district in which an action may otherwise be brought as provided in this section, [in] any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." As the Defendants are subject to the Court's personal jurisdiction based on 18 U.S.C. § 2255, venue is proper here.

**II.**
**THE PARTIES AND PERSONAL JURISDICTION**

**A. Plaintiffs**

12. Plaintiffs are individuals who were held in a facility operated by Defendants while they were minors.

13. Plaintiffs bring this case on behalf of themselves and all other similarly-situated individuals who were also held at a facility operated by Defendants and who were forced to work for no pay.

14. Plaintiff Anna Claire Bates ("Ms. Bates") is an individual with an established residence in Jefferson County, Alabama.

15. Ms. Bates was confined at Auldern Academy in North Carolina from April 2016 to June 2017, where she was forced to work for no pay to the benefit of the Defendants.

3

16. Plaintiff Jane Doe ("Ms. Doe") is an individual with an established residence in Alabama.

17. Ms. Doe was confined at Sequel Montgomery from December 2014 to the fall of 2015.

18. Due to the sensitive, private, and potentially retaliatory nature of her allegations, Doe requests that this Court permit her to proceed under a pseudonym. Courts recognize an exception to the general rule that pleadings name all parties when the issues involved are of a sensitive and highly personal nature. For good cause, as exists here, the Court may permit a party to proceed in pseudonym to protect the party from annoyance, embarrassment, oppression, or undue burden or expense. Here, granting pseudonym status is warranted because this litigation will involve the disclosure of stigmatizing sexual information, including child sexual abuse. Ms. Doe fears the stigma from her family, friends, and community if her true identity is revealed in the public record.

19. Defendants will not be prejudiced by Doe's use of a pseudonym. She will agree to reveal her identity to the Defendants for the limited purpose of investigating her claims once the parties are governed by a protective order. Doe simply seeks redaction of her personal identifying information from the public docket and assurances that Defendants will not use or publish her identity in a manner that will compromise her personal life or future relationships, such as employment prospects.

20. The putative class members are all minors who were held at one of the facilities owned, operated, or managed by Defendant Sequel Youth and Family Services, LLC, Defendant Sequel TSI Holdings, LLC, Defendant Sequel TSI of Alabama, LLC, or Defendant Sequel TSI of Auldern, LLC and who provided labor or services without pay. The putative class only includes those who had not yet reached the age of twenty-eight prior to September 16, 2022.

**B. Defendants**

21. The Defendants are all companies that have owned and operated facilities across the United States for youth with behavioral and emotional challenges as part of the Sequel business network. Since Defendant Sequel Youth and Family Services, LLC was founded in 1999, it has morphed into a venture between many companies.

22. As time passed, several additional companies were formed, and their function seems to be largely to make it difficult for individuals to determine who is in charge and responsible for the venture's actions.

23. Defendant Sequel Youth and Family Services, LLC ("Defendant Sequel") is a Delaware limited liability company that operated the youth facilities until around 2020. Defendant Sequel had two thousand and five hundred (2,500) employees and generated around one hundred and seventy-seven million and four hundred and seventy thousand dollars ($177.47 million). In its effort to protect and shield assets from liability, Defendant Sequel had fifty (50) companies within its corporate structure.

24. Adam Shapiro and John Ripley founded Defendant Sequel in 1999.

25. In 2014, John Ripley became the majority owner of Defendant Sequel until Altamont Capital bought Defendant Sequel in 2017. John Ripley remained with Defendant Sequel as Chairman of the Board until 2019.

26. As recently as February of 2022, SYFS Holdings, LLC owned Defendant Sequel. It is possible the legal name of SYFS Holdings, LLC may actually be SYFS Intermediate Holdings, LLC.

27. SYFS Parent Holdings, LLC owned SYFS Intermediate Holdings, LLC.

28. In early 2022, Defendant Sequel and SYFS Intermediate Holdings, LLC assigned all of their assets to SYFSLLC (ABC), LLC. At this time, Plaintiffs are unsure of the purpose of that assignment.

29. According to the Commercial and Government Entity Program, Defendant Sequel's principal place of business was in Huntsville, Alabama, at 1131 Eagletree Lane, Huntsville, AL 35801.

30. Defendant Sequel owned Defendant Sequel TSI Holdings, LLC.

31. Defendant Sequel TSI Holdings, LLC ("Defendant TSI Holdings") is an Iowa limited liability company registered to do business in Alabama. Its principal place of business is in Huntsville, Alabama, at 1131 Eagletree Lane, Huntsville, AL 35801.

32. For some time, Defendant TSI Holdings was the managing member of Defendant Sequel TSI of Alabama, LLC and Defendant Sequel TSI of Auldern, LLC.

33. In an April 23, 2018 Corporate Disclosure Statement filed with the United States District Court of New Jersey, Defendant TSI Holdings represented that it was doing business as Sequel Youth and Family Services.[2] This admission was repeated in the Answer filed in that case.[3]

34. Defendant Sequel TSI of Alabama, LLC ("Defendant TSI of Alabama") is an Alabama limited liability company, now registered as Brighter Path Alabama, LLC.[4] Its principal place of business is in Montgomery, Alabama.

---

[2] *Durham v. Capital Academy*, Case 1:18-cv-02045-RMB-JS, Doc. 10, (filed April 23, 2018).

[3] *Durham v. Capital Academy*, Case 1:18-cv-02045-RMB-JS, Doc. 9 (filed April 23, 2018).

[4] Despite these entities still being in existence today, this Complaint uses the past tense when discussing the various entities because their assets have been sold, and they do not appear to be operating the Sequel Venture any longer.

35. TSI of Alabama owned and operated the Sequel facilities/schools in Alabama, including the Sequel Montgomery facility/school where Ms. Doe was held.

36. Defendant Sequel TSI of Auldern, LLC ("Defendant TSI of Auldern") is a North Carolina limited liability company. Its principal place of business is in Huntsville, Alabama, at 1131 Eagletree Lane, Huntsville, Alabama, 35801.

37. Defendant TSI of Auldern owned and operated a facility/school called Auldern Academy, where Ms. Bates was held.

38. The sole member of Defendant TSI of Auldern is Defendant TSI Holdings.

**C. Personal Jurisdiction Over Defendants**

39. First, this Court has personal jurisdiction over all Defendants based on Federal Rule of Civil Procedure 4(k)(1)(C) and the nationwide service of process provision 18 U.S.C. § 2255. Plaintiffs were minors at the time of their trafficking, and they assert claims under 18 U.S.C. §§ 1589 and 1590. 18 U.S.C. § 2255 provides for nationwide service of process for such claims.

40. This statutory nationwide service of process provision provides a basis for nationwide personal jurisdiction over the Defendants. As such, personal jurisdiction is governed by the Due Process Clause of the Fifth Amendment, and the Court can look to the entire United States to determine if minimum contacts exist, not exclusively Alabama. *Doe #1 v. MG Freesites, LTD*, Case 7:21-cv-00220-LSC, 2022 WL 407147, *1, *24 (N.D. Ala. Feb. 9, 2022)(citing *Kammona v. Onteco Corp.*, 587 F. App'x 575, 579 (11th Cir. 2014)).

41. Each of the Defendants has purposefully established minimum contacts with the United States, such that maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice. Defendants have purposefully directed their activities at residents of the

United States. All of the Defendants were formed as limited liability companies in the United States with principal places of business in the United States.

42. Additionally, this Court has general personal jurisdiction over Defendants because their principal places of business are in Alabama.

43. Finally, this Court also has specific personal jurisdiction over Defendant TSI of Alabama as it owned and operated the Sequel Montgomery facility in Alabama where Ms. Doe was held, forced to labor without pay, and sexually abused.

### III.
### FACTUAL ALLEGATIONS

#### A. Sequel Venture

44. At all relevant times, Defendants were in a venture together within the scope of 18 U.S.C. § 1595(a). Defendants took part in a common undertaking or enterprise that provided shelter, education services, and other care to minors with perceived behavioral, emotional, and physical challenges (hereinafter "Sequel Venture"). The Sequel Venture was a part of an industry that has been coined the "troubled teen industry."

45. The venture included Adam Shapiro, John Ripley, SYFS Parent Holdings, LLC, SYFS Holdings, LLC, SYFS Intermediate Holdings, LLC, Defendant Sequel, Defendant TSI Holdings, Defendant TSI of Alabama, Defendant TSI of Auldern, additional local companies affiliated with the Defendants that operated the youth facilities across the United States, and the staff employed to work at the youth facilities.

46. Adam Shapiro and John Ripley founded Defendant Sequel in 1999 to operate Clarinda Academy in Clarinda, Iowa. Both Ripley and Shapiro previously worked for a for-profit corrections company before forming Defendant Sequel. In 2009, Defendant Sequel acquired Three Springs, Inc. or TSI. In 2014, John Ripley became the majority owner of Defendant

Sequel. In 2017, John Ripley sold Defendant Sequel to Altamont Capital. At that time, there were over forty (40) facilities in twenty-one (21) states. John Ripley remained as the Chairman of the Board after the sale until 2019.

47. Defendant Sequel owned Defendant TSI Holdings. Defendant TSI Holdings wholly owned and managed Defendant TSI of Alabama and Defendant TSI of Aldern.

48. Defendant TSI of Auldern operated Auldern Academy which housed Ms. Bates and other children. Defendant TSI of Auldern presented Auldern Academy as a "private therapeutic boarding school offering 8th through 12th grade college preparatory education." Auldern Academy, March 4, 2016, https://web.archive.org/web/20160304193238/http://www.auldern.com/. Parents would pay Defendant TSI of Auldern one hundred and fifteen thousand dollars ($115,000.00) to educate and help their children. Defendant TSI of Auldern enrolled up to sixty (60) girls at a time, charged their parents tuition, then cut overhead costs by using the girls as free labor instead of purchasing adequate janitorial and landscaping services.

49. Defendant TSI of Alabama operated several facilities in Alabama including Sequel Courtland, Sequel Montgomery, Sequel Owens Cross Roads, and Sequel Tuskegee.

50. The State of Alabama placed Ms. Doe at Sequel Montgomery after she was abandoned by her guardian. On an archived version of Defendant Sequel's website, Defendant Sequel described Sequel Montgomery as a Staff-Secure Residential facility that offered an intensive therapeutic long-term program.[5] Sequel of Montgomery reported holding a license from the Alabama Department of Human Resources. Instead of helping Ms. Doe when she was vulnerable and in the custody of the State, Defendant TSI of Alabama exploited her by forcing her and her

---

[5]Sequel Youth Services, https://web.archive.org/web/20150314235203/http://sequelyouthservices.com/html/staffsecure-montgomery.html (archived on March 14, 2015).

fellow students to work for no pay. Further, Defendant TSI of Alabama subjected Ms. Doe to neglect and sexual abuse by multiple adults.

51. In 2015, the Co-founder of Defendant Sequel, John Ripley, explained to a group at the Merrick School of Business in Baltimore that, "You can keep[sic] make money in this business if you control staffing[.]" Hannah Rappleye, Tyler Kinkade, and Kate Snow, *A profitable 'death trap': Sequel youth facilities raked in millions while accused of abusing children*, NBC News (Dec.                                    16,                                    2020), https://www.nbcnews.com/news/us-news/profitable-death-trap-sequel-youth-facilities-raked-millions-while-accused-n1251319.

**B. Defendant TSI of Auldern forced Ms. Bates to work for no pay in violation of the TVPRA.**

52. Defendant TSI of Auldern violated the TVPRA by forcing Ms. Bates and her classmates to work for no pay.

53. Defendant TSI of Auldern forced Ms. Bates, along with the other girls at Auldern Academy, to clean and maintain the entire campus.

54. Defendant TSI of Auldern made Ms. Bates and other children responsible for janitorial tasks at Auldern Academy. This included cleaning the bathrooms, the dining hall, the activities building, the dormitories, the common area, and the therapy annex. For each of these buildings, Defendant TSI of Auldern required Ms. Bates and the other girls to sweep, mop, and take out the trash.

55. Defendant TSI of Auldern forced Ms. Bates and the other girls to maintain the campus grounds by weeding, laying out pine straw, moving rocks, and building hiking trails.

56. Defendant TSI of Auldern obtained the labor or services of Ms. Bates and the other girls through serious harm and threats of serious harm.

57. Defendant TSI of Auldern employed several abusive measures to force Ms. Bates  and the other girls to acquiesce to Defendant TSI of Auldern's control, including forcing them to work.

58. One measure was termed "Refocus." During Refocus, Defendant TSI of Auldern forced the children to run up a hill carrying rocks, sleep on the floor of the activities room with no blanket or pillow, eat only plain oatmeal and rice and beans which they had to cook over a fire, and walk six miles.

59. Ms. Bates suffered serious harm when placed on Refocus. She experienced severe embarrassment. Ms. Bates described feeling demeaned and like a zoo animal. When Refocus stretched her physically by limiting her food and requiring strenuous physical activity, Ms. Bates felt concerned and scared. At least on one occasion, she was on the verge of passing out.

60. Defendant TSI of Auldern employed another abusive measure termed "Non-com." When a child was placed on Non-com, they were not permitted to communicate with anyone other than their therapist during their weekly one-on-one therapy session. Typically, when a child was placed on Non-com, they were not permitted to participate in their weekly family therapy session. Many times, therapists would cancel the one-on-one session to further exacerbate the torture of Non-com. Although staff were permitted to communicate with the child, the child was forced to write everything on a notecard. The child was not even allowed to make eye contact with others during this time period.

61. Ms. Bates suffered serious harm when placed on Non-com. She experienced suicidal ideations and felt less than human. Ms. Bates felt doomed and like she was always going to be under their control.

62. Defendant TSI of Auldern also employed a method called "5 Foot" or "2 Foot." If a child was placed on 5 Foot or 2 Foot, then they were required to be within those distances from staff at all times, including when the child was sleeping. They had to get their mattress every night and move it to the common room in the dorm. The night staff would watch the child sleep five (5) feet or two (2) feet away from the night staff person's desk. This also caused the child on 5 Foot or 2 Foot to go to sleep later and wake up earlier than all other children.

63. Ms. Bates suffered serious harm when placed on 5 Foot. She felt demeaned, sad, and frustrated. Ms. Bates felt desperate to get out of that punishment and would do anything the staff asked in order to do so.

64. Finally, Defendant TSI of Auldern also threatened to take away and took away school credits from students who did not comply with Defendant TSI of Auldern's orders.

65. Taking away school credits caused serious harm to the students, and the threat of losing school credits was a threat of serious harm. If a child at Auldern Academy lost school credits, then they would either be forced to attend the Academy longer in order to complete their schooling or they would have to enroll in another school at a later time to complete that schoolwork. Based on Ms. Bates's knowledge and belief, most of the children whose credits were taken away did not finish school elsewhere, and their lives were derailed.

66. Ms. Bates and other children acquiesced to Defendant TSI of Auldern's demands to perform labor in order to avoid being placed on Refocus, Non-com, or 5-Foot and to avoid losing their school credits.

67. These threats and harms were sufficiently serious under all the surrounding circumstances to compel the girls at Auldern Academy to perform or continue performing labor or services to avoid incurring the harm.

68. Under the guise of rehabilitating its students, Defendant TSI of Auldern limited, controlled, and supervised Ms. Bates's and the putative class's communications with individuals outside of the facility. Defendant TSI of Auldern would not permit students to send letters for the first six months, and then they only allowed written mail to an approved friend list. Students could "earn" the ability to use email. Students were allowed to call their family once a week and had one family counseling session each week. Ms. Bates had reason to believe that Defendant TSI of Auldern was listening to her phone calls with her family.

69. Defendant TSI of Auldern employed a scheme, plan, or pattern of seriously harmful and abusive tactics to coerce Ms. Bates and the putative class into submission. This scheme, plan, or pattern included forcing and threatening to force the children to participate in Refocus, Non-Com, and 5 Foot and taking away their school credits whenever the children did not acquiesce to Defendant TSI of Auldern's orders.

70. This scheme, plan, or pattern caused Ms. Bates and the other girls to believe that if they did not perform the labor or services required by Defendant TSI of Auldern, they would face serious harm from Refocus, Non-Com, 5 Foot, and loss of school credits.

71. Defendant TSI of Auldern's staff, including the Executive Director–Angie Fusco, employed all of the abusive tactics outlined in paragraphs 52-70.

72. The Auldern Academy website lists on-campus "community service" as one activity in which girls were required to participate.[6]

73. Defendant TSI of Auldern did not pay for adequate janitorial services.

74. Defendant TSI of Auldern only paid for landscaping services at times when parents were visiting.

---

[6]*Aldern*            *"Families,"*            Auldern            Academy, https://web.archive.org/web/20170502153503/http://www.auldern.com/student-life/auldern-families-and-more/ (captured May 2, 2017).

75. Defendant TSI of Auldern knew it was receiving money from participating in the Sequel Venture. Defendant TSI of Auldern exploited parents seeking help for their children by charging one hundred and fifteen thousand dollars ($115,000.00) in tuition. Defendant TSI of Auldern enrolled sixty (60) girls at a time, charged their parents tuition, then cut overhead costs by using the girls as free labor instead of purchasing adequate janitorial and landscaping services.

**C. Defendant TSI of Alabama forced Ms. Doe to work for no pay in violation of the TVPRA.**

76. Defendant TSI of Alabama violated the TVPRA by forcing Ms. Doe and her classmates to work for no pay.

77. Defendant TSI of Alabama forced Ms. Doe and other children to clean the Sequel Montgomery campus daily and deep clean areas of the campus weekly. The students held at Sequel Montgomery were required to do additional deep cleaning the day before any state government inspection.

78. Defendant TSI of Alabama forced Ms. Doe and other children to clean the campus each day. The children were required to sweep, mop, and wipe down the day room, hallways, and lunch room. They were required to clean the group restroom which included cleaning toilets, sweeping, mopping, and taking out the trash. Defendant TSI of Alabama forced the children to clean the back porch by sweeping the leaves and picking up trash. Finally, the children were required to empty all trash cans each night.

79. Defendant TSI of Alabama forced Ms. Doe and other children to deep clean the campus weekly. This included the administrative offices, school classrooms, teacher offices, school therapist office, lunch room, day room, conference room, supervisor's office, hallways, back porch, staff bathrooms, and group restroom.

80. As a part of this deep cleaning, Defendant TSI of Alabama forced the children to dust the blinds, tvs, furniture, alarm systems, window seals, door seals, and ceiling fans. It forced the children to clean the windows with cleaner on the inside and outside. It forced the children to clean the wood furniture with wood polish. It forced the children to deep clean two big couches by taking off all of the cushions, vacuuming them, spraying them with Febreze, and spraying them with lice treatment. It forced the children to clean the walls with Lysol and scrub them from the top to the bottom. It forced the children to scrub the trim at the top of the wall and the baseboards with a scrub brush. It forced the children to sweep all of the floors, then mop them with Fabuloso, Pinesol, and hot water which they were required to retrieve from the back porch. It forced the children to clean the back porch by sweeping it and spraying it off. Finally, Defendant TSI of Alabama forced the children to empty all of the trash cans, including the administrative office trash cans.

81. Defendant TSI of Alabama also forced the children to do all of the deep cleaning outlined in paragraphs 79-80  the day before any state government inspection.

82. Defendant TSI of Alabama obtained the labor or services of Ms. Doe and the other children through serious harm and threats of serious harm.

83. Defendant TSI of Alabama employed a disciplinary system that would extend the length of a child's required placement at Sequel Montgomery if they failed to comply with staff orders.

84. This caused the children serious harm because Sequel Montgomery was a secure facility on lock down at all times.

85. Defendant TSI of Alabama would employ another type of harmful discipline that would coerce the children into working for no pay. Defendant TSI would lock the children in the seclusion room that was called "the Box." This room was the size of a small child's closet.

Defendant TSI of Alabama would force the children to stay in the room all day. Defendant TSI of Alabama would only check on the children every few hours. As a result, the children were forced to hold their refuse or use the restroom on themselves.

86. Placing the children in the Box caused them serious harm as it isolated them for the entire day and limited their access to basic necessities, like a restroom.

87. Ms. Doe and the other children acquiesced to Defendant TSI of Alabama's demands to perform labor in order to avoid these harmful measures such as being forced to stay at Sequel Montgomery longer and being placed in the Box.

88. This threat and harm was sufficiently serious under all the surrounding circumstances to compel the girls at Sequel Montgomery to perform or continue performing labor or services to avoid incurring the harm.

89. Defendant TSI of Alabama employed a scheme, plan, or pattern of seriously harmful and abusive tactics to coerce Ms. Doe and the other children into submission. This scheme, plan, or pattern included forcing and threatening to force the children to stay in the Box and increasing and threatening to increase the length of their placement at Sequel Montgomery whenever the children did not acquiesce to Defendant TSI of Alabama's orders.

90. This scheme, plan, or pattern caused Ms. Doe and the other girls to believe that if they did not perform the labor or services required by Defendant TSI of Alabama, they would face serious harm from isolation in the Box or an extended placement at Sequel Montgomery.

91. Defendant TSI of Alabama staff employed all of the abusive tactics outlined in paragraphs 76-90 .

92. Outside of the forced labor of Ms. Doe and the other children, Defendant TSI of Alabama only employed one woman to clean the entire Sequel Montgomery campus. This woman was only on campus cleaning for an hour or two each day.

93. Defendant TSI of Alabama knew it was receiving money from participating in the Sequel Venture. Defendant TSI of Alabama was paid by the State of Alabama to house and treat children in the State's custody.

**D. Sexual Assault of Ms. Doe**

94. Ms. Doe was born in 1999. On December 29, 2014, at age fifteen (15), the state of Alabama placed her at Sequel Montgomery. She was at all times during her stay at Sequel Montgomery in the custody of and under the control and supervision of Defendant TSI of Alabama's employees, agents, security, maintenance, and program staff.

95. During this time, when she was without the protection of her family and especially vulnerable due to her age and needs, an adult male agent or employee of Defendant TSI of Alabama, whom Defendant TSI of Alabama knew or should have known had a propensity for impermissibly crossing boundaries with children, took advantage of Ms. Doe's vulnerability.

96. The adult male employee would stay at work late and call Ms. Doe into his office after all of the administrative staff had left.

97. Ultimately, the Defendant TSI of Alabama's male employee sexually abused Ms. Doe at least four (4) times. The adult male employee sexually abused Ms. Doe in his office, in a counselor's office, and in the school therapist's office.

98. Ms. Doe reported the abuse to her therapist. The therapist did not report the abuse to the police or any other appropriate channel.

99. Later, Ms. Doe reported the abuse to a female social worker employed by Defendant TSI of Alabama. The female social worker took Ms. Doe to a child advocacy center in Montgomery, Alabama, to report the abuse.

100.   While Ms. Doe was still in the care and custody of Defendant TSI of Alabama, the same female social worker befriended and groomed Ms. Doe. This grooming resulted in the female social worker sexually abusing Ms. Doe as well.

101.   Defendant TSI of Alabama knew or should have known that the female social worker had a propensity for impermissibility crossing boundaries with children.

102.   Ms. Doe was unequivocally incapable of consenting to sex under Alabama law, due to her age.

103.   Furthermore, her mental condition and the separation from her guardian while staying at Sequel Montgomery made Ms. Doe especially vulnerable at the time of the underlying events. Accordingly, Defendant TSI of Alabama owed a special duty to her as a special relationship existed between Defendant TSI of Alabama and the minor child in its custody or supervision.

104.   The male employee and female social worker ultimately took advantage of Ms. Doe by utilizing their status and credentials as employees of Defendant TSI of Alabama to repeatedly get access to Ms. Doe. The male employee's and female social worker's status and credentials as employees of Defendant TSI of Alabama provided them the opportunity to be alone with Ms. Doe which was not available to anyone other than Defendant TSI of Alabama employees possessing the limited Defendant TSI of Alabama credentials issued by Defendant TSI of Alabama.

105.   Furthermore, Defendant TSI of Alabama's safety or security measures, which otherwise would have reduced or eliminated the number of opportunities for the male employee

and female social worker to be alone with Ms. Doe, were wholly inadequate or not implemented. Defendant TSI of Alabama's inadequate security tragically allowed the male employee and female social worker repeated one-on-one contact with Ms. Doe through which the male employee and female social worker proceeded to groom her, harass her, and eventually sexually abuse her.

106.    The Sequel Montgomery facility was designed and staffed in a way that compromised the safety and security of the facility.

107.    But for the male employee's and female social worker's status and credentials as employees of Defendant TSI of Alabama, which afforded them power and control over Ms. Doe and other children in Defendant TSI of Alabama's care, they would not have had access to Ms. Doe and would not have been able to groom her, harass her, and rape her. The male employee and female social worker had authority from Defendant TSI of Alabama to enter the facility, while Ms. Doe lacked access to her guardian to protect her and had no power or ability to voluntarily leave the Sequel Montgomery facility.

108.    As a result of the positions of power and access granted to the male employee and female social worker by Defendant TSI of Alabama, the male employee and female social worker groomed, harassed, and sexually assaulted Ms. Doe. The male employee's and female social worker's status as employees or agents of Defendant TSI of Alabama and Defendant TSI of Alabama's inadequate security were essential elements in enabling the male employee and female social worker and thereby allowed them the unchecked access to the vulnerable Ms. Doe. Defendant TSI of Alabama knew that Ms. Doe and the other children in its care were vulnerable and at risk of being harassed, assaulted, or sexually abused during their placement if not protected by Defendant TSI of Alabama.

109.     Defendant TSI of Alabama knew or should have known of the risk or propensity of the male employee and the female social worker to impermissibly cross boundaries and engage in grooming, harassment, assault, abuse, or other misconduct with minors, including Ms. Doe. Despite this knowledge, Defendant TSI of Alabama unreasonably and to the risk of minors, including Ms. Doe, continued to employ the male employee and the female social worker. Defendant TSI of Alabama failed to monitor or supervise the male employee and the female social worker and the Sequel Montgomery facility in a way to protect minors and prevent Ms. Doe's sexual abuse at Sequel Montgomery.

110.     Further, Defendant TSI of Alabama owed a duty to any invitees to maintain its premises in a safe and secure condition. Defendant TSI of Alabama owed such a duty to Ms. Doe.

111.     Defendant TSI of Alabama was obviously aware that children would frequently be present on the premises of Sequel Montgomery, that children would be separated from their parents or guardians while on the premises, and that children were particularly vulnerable to several severe perils above and beyond those facing general business invitees because the children were separated from their families during their placement.

112.     Furthermore, Defendant TSI of Alabama was aware that many of the children in its care had histories of sexual trauma. The danger of sexual exploitation was entirely foreseeable and preventable; therefore, one of the fundamental responsibilities for Defendant TSI of Alabama was to keep the children safe from being victimized.

113.     Defendant TSI of Alabama unreasonably failed to warn or otherwise protect Ms. Doe from harassment, assault, abuse, and other misconduct perpetrated by the male employee and the

female social worker. Defendant TSI of Alabama unreasonably disregarded the safety, security, and well-being of Ms. Doe.

114.    As a direct and proximate result of the Defendant's conduct, Ms. Doe was harmed physically and emotionally and suffered resultant damages.

115.    Ms. Doe's state claims based on her sexual abuse injuries have not expired as Alabama Code § 6-2-8 allows Ms. Doe to bring suit at any point before she turns twenty-five (25) years of age.

## IV.
## CLASS ACTION ALLEGATIONS

116.    While Plaintiffs' claims relate to different Sequel facilities, the challenged practices originated with Defendant Sequel and Defendant TSI Holdings. Upon information and belief, these Defendants were involved in violations at all of the Sequel facility locations.

117.    The Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(1), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

118.    Plaintiffs bring this action on behalf of themselves and the following "Class:"

All minors who were housed at one of the facilities owned, operated, or managed by Defendant Sequel Youth and Family Services, LLC, Defendant Sequel TSI Holdings, LLC, Defendant Sequel TSI of Alabama, LLC, or Defendant Sequel TSI of Auldern, LLC and who provided labor or services without pay. The Class only includes those who had not yet reached the age of twenty-eight prior to September 16, 2022.

119.    Ms. Bates brings this action on behalf of herself and the following "Auldern Subclass:"

All minors who were held at Auldern Academy at 990 Glovers Grove Church Rd, Siler City, NC 27344 and who provided labor or services without pay. The Auldern Subclass

only includes those who had not yet reached the age of twenty-eight prior to September 16, 2022.

120.   Ms. Doe brings this action on behalf of herself and the following "Sequel Montgomery Subclass:"

All minors who were held at Sequel Montgomery, Alabama and who provided labor or services without pay. The Sequel Montgomery Subclass only includes those who had not yet reached the age of twenty-eight prior to September 16, 2022.

121.   Plaintiffs reserve the right to seek leave to modify this Class definition and the subclass definitions, including the addition of subclasses, after having the opportunity to conduct discovery.

122.   **Numerosity.** The requirements of Rule 23(a)(1) are satisfied in that there are too many members of the Class and members of the subclasses for joinder of all of them to be practicable. The exact sizes of the Class and subclasses are not currently known. However, based on the fact the Defendants' residential facilities were capable of housing around one thousand and nine hundred (1,900) children at one time, there is no issue establishing the numerosity requirement.

123.   Even looking separately at the Auldern Subclass and the Sequel Montgomery Subclass, the requirements of Rule 23(a)(1) are satisfied. Auldern Academy housed up to sixty (60) children at one time, and Sequel Montgomery held up to twenty (20) children at one time.

124.   Plaintiffs are currently unaware of the identities of all of the children who would be members of the Class and subclasses, but this information is readily ascertainable from Defendants' records. Defendants should be required to provide Plaintiffs with a list–including

last known addresses, telephone numbers, and email addresses if known–of all individuals who were held at a Sequel facility.

125.   **Commonality.** The claims of the Class and subclasses raise numerous common issues of fact and/or law, thereby satisfying the requirements of Rule 23(a)(2). The common questions of law and fact predominate over questions affecting only individual members of the Class or subclasses. Additionally, class treatment of common issues under the Federal Rule of Civil Procedure 23(c)(4) will materially advance the litigation.

126.   This action involves questions of fact and law common to the Class and subclasses, including:

a.   Whether Defendants' conduct violated the forced labor and trafficking provisions of the TVPRA, 18 U.S.C. §§ 1589(a), 1590(a), 1594(a)-(b), and 1595(a);

b.   The nature of damages available to members of the Class and subclasses including the applicability of compensatory and/or punitive damages;

c.   Whether Defendants used and/or threatened members of the Class and subclasses with force, physical restraint, serious harm, and/or abuse of the legal process in order to obtain the labor or services of the members of the Class and subclasses. Whether Defendants did so knowingly;

d.   Whether Defendants employed a scheme, plan, or pattern to obtain the labor or services of the members of the Class and subclasses. Whether the scheme, plan, or pattern employed was intended to cause members of the Class and subclasses to believe that if they did not perform labor or services, they would suffer serious harm or physical restraint. Whether Defendants did so knowingly;

e.   Whether Defendants recruited, harbored, transported, obtained and/or provided members of the Class and subclasses for the purpose of subjecting them to forced labor and/or involuntary servitude;

f.   Whether Defendants intended to subject members of the Class and subclasses to forced labor and/or involuntary servitude and took a substantial step to do so;

g.   Whether the Defendants conspired to subject members of the Class and subclasses to forced labor and/or involuntary servitude. Whether there was a conspiracy to violate 18 U.S.C. § 1589. Whether the Defendants had knowledge of the essentials of the conspiracy. Whether the Defendants committed an act to further the conspiracy;

h.   Whether Defendants knowingly benefitted from participating in a venture;

i.   Whether the Defendants' venture violated 18 U.S.C. §§ 1589, 1590 1594(b);

j.   Whether the Defendants knew or should have known the venture violated 18 U.S.C.  §§ 1589, 1590, 1594(b); and

k.   The source and amount of the Class's and subclasses' damages.

127.   **Typicality.** Plaintiffs' claims are typical of the unnamed members of the Class and the subclasses that they seek to represent thereby satisfying the requirements of Rule 23(a)(3). Members of the Class and the subclasses have all been subject to the same unlawful practices of Defendants, and their claims arise out of these practices. The claims of Plaintiffs and the unnamed members of the Class and the subclasses are based on the same legal theories. Defendants subjected Plaintiffs and the members of the Class and the subclasses to the same coercive rules and practices that constituted violations of the TVPRA. Plaintiffs and the members of the Class and the subclasses suffered similar types of damages.

128.    Among other things, Plaintiffs and the members of the Class and the subclasses were held at a Sequel facility and forced to work for Defendants and suffered the same violations.

129.    **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the Class and the subclasses. The requirements of Rule 23(a)(4) are satisfied in that the named Plaintiffs have a sufficient stake in the litigation to vigorously prosecute their claims on behalf of the Class and the subclasses and the named Plaintiffs' interests are aligned with those of the proposed Class and the subclasses. Plaintiffs do not have any interest that is in conflict with or is antagonistic to the interests of the Class or the subclasses and have no conflict with any other member of the Class or the subclasses.

130.    Plaintiffs understand that, as class representatives, they assume responsibilities to the Class and subclasses to represent their interests fairly and adequately.

131.    Further, Plaintiffs have retained competent counsel that have experience litigating claims regarding human trafficking, exploitation of minors, complex litigation, and class actions.

132.    There is no reason why Plaintiffs and their counsel will not vigorously pursue this matter.

133.    **Predominance and Superiority.** A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein. The damages suffered by each individual member of the Class or subclasses may not be sufficient to justify the burden and expense of individual prosecution of the litigation.

134.    Further, it would be difficult for members of the Class and subclasses to obtain individual redress effectively for the wrongs done to them. If individual actions were to be brought by each member of the Class or subclasses, the result would be a multiplicity of actions, creating hardships for such members, the Court, and the Defendants.

135.   Additionally, individual litigation would present the potential for varying, inconsistent, or contradictory judgments while magnifying the delay and expense to all parties and to the court system, resulting in multiple trials of the same legal issue and creating the possibility of repetitious litigation.

136.   By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

137.   This case does not present individualized factual or legal issues which would render a class action difficult. Plaintiffs and the members of the Class and subclasses have suffered a common cause of injury, namely forced labor, caused by the common course of conduct engaged in by Defendants.

138.   Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Class and subclasses would be proper.

**V.**
**CAUSES OF ACTION-LABOR TRAFFICKING**

**COUNT I**
**CIVIL ACTION UNDER 18 U.S.C. § 1595(a)**
**FOR FORCED LABOR VIOLATION OF 18 U.S.C. § 1589(a)**
(Against Defendants TSI of Auldern and TSI of Alabama)
(On behalf of Plaintiffs and
the Auldern Subclass and Sequel Montgomery Subclass)

139.   The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

140.     This Cause of Action sets forth claims by Plaintiffs Ms. Bates and Ms. Doe and the Auldern Subclass and Sequel Montgomery Subclass against Defendants TSI of Auldern and TSI of Alabama under the civil remedies provision of the TVPRA, 18 U.S.C. § 1595(a), in that

a.   Plaintiffs, the Auldern Subclass, and the Sequel Montgomery Subclass are victims of violations of 18 U.S.C. § 1589(a).

b.   Defendants TSI of Auldern and TSI of Alabama were perpetrators of the foregoing violations.

141.     Defendants TSI of Auldern and TSI of Alabama provided or obtained the labor and/or services of Plaintiffs, the Auldern Subclass, and the Sequel Montgomery Subclass. Defendant TSI of Auldern forced Ms. Bates and the Auldern Subclass to clean and maintain the campus of Auldern Academy. Defendant TSI of Alabama forced Ms. Doe and the Sequel Montgomery Subclass to clean the facilities at Sequel Montgomery.

142.     Defendants TSI of Auldern and TSI of Alabama provided or obtained the labor or services by means of serious harm or threats of serious harm as prohibited in 18 U.S.C. § 1589(a)(2).

143.     Defendant TSI of Auldern would punish or threaten to punish children who did not obey orders with the abusive measures outlined above in paragraphs 52-70 such as Refocus, Non-com, 5 Foot, and docking school credits.

144.     Defendant TSI of Alabama would punish or threaten to punish children who did not obey orders with placement in the Box and an extension in the length of their stay at the facility as outlined in paragraphs 76-90 above.

145.    These punishments and threats of punishment were sufficiently serious to compel the children to perform or continue performing the labor or services in order to avoid incurring that harm.

146.    Defendants TSI of Auldern and TSI of Alabama provided or obtained the labor or services by means of a scheme, plan, or pattern intended to cause Plaintiffs Ms. Bates and Ms. Doe and members of the putative Auldern and Sequel Montgomery Subclasses to believe that, if they did not perform such labor or services, they would suffer serious harm or physical restraint in violation of 18 U.S.C. § 1589(a)(4).

147.    Defendant TSI of Auldern and TSI of Alabama schemed to, among other things, (a) isolate Ms. Bates and members of the putative Auldern Subclass, (b) coerce Plaintiffs and the subclasses to live and work in conditions causing psychological deterioration and harm, (c) limit Plaintiffs' and the subclass's outside contacts, and (d) cause financial harm by failing to pay Plaintiffs and the subclasses for their labor.

148.    Due to Defendants TSI of Auldern and TSI of Alabama's scheme, plan, or pattern, the Plaintiffs and the Auldern and Sequel Montgomery Subclasses believed they would face the serious harm of Refocus, Non-com, 5 Foot, docking school credits, the Box and/or extension of their length of stay if they did not perform the labor or services.

149.    Defendants TSI of Auldern and TSI of Alabama knew they were providing or obtaining the labor or services from the Plaintiffs and the Auldern and Sequel Montgomery Subclasses through the means listed in paragraphs 52-70, 76-90.

150.    The staff employed by Defendants TSI of Auldern and TSI of Alabama were the ones who carried out the abusive tactics outlined above. The staff knew that the children were

required to serve as the campus janitors and groundskeepers, knew the children were not being paid, and knew the children would face serious harm if they did not perform this labor or service.

151.    Defendants TSI of Auldern and TSI of Alabama knew they were not hiring adequate janitorial and groundskeeping staff to properly maintain each facility.

152.    Defendants TSI of Auldern and TSI of Alabama planned to use the children for free janitorial and groundskeeping services to cut staff costs.

153.    As a proximate result of Defendants TSI of Auldern and TSI of Alabama's conduct, Plaintiffs and members of the putative subclasses suffered financial and other damages.

154.    Under the TVPRA and 18 U.S.C. § 2255, Plaintiffs and the Auldern and Sequel Montgomery Subclasses are entitled to recover the actual damages such person sustained or liquidated damages in the amount of $150,000.00.

155.    Under the TVPRA and 18 U.S.C. § 2255, Plaintiffs and the Auldern and Sequel Montgomery Subclasses are entitled to recover additional damages, including, but not limited to:

    a.   Punitive damages; and

    b.   Attorney's and experts' fees and costs.

**COUNT 2**
**CIVIL ACTION UNDER 18 U.S.C. § 1595(a) FOR BENEFITTING**
**FROM THE FORCED LABOR VIOLATION OF 18 U.S.C. § 1589(a)**
(Against all Defendants)
(on Behalf of Plaintiffs and the Class)

156.    The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

157.    This Cause of Action sets forth claims by Plaintiffs and the Class against all Defendants under the civil remedies provision of the TVPRA, 18 U.S.C. § 1595(a), in that

    a.   Plaintiffs and the Class are victims of violations of 18 U.S.C. § 1589(a).

b.   Defendants knowingly benefitted, financially or by receiving anything of value from participation in a venture which Defendants knew or should have known engaged in the foregoing violations.

158.   The Defendants participated in the Sequel Venture.

a.   Defendants took part in a common undertaking or enterprise to provide shelter, educational services, and other care to minors with perceived behavioral, emotional, and physical challenges as outlined in paragraphs 44-51.

b.   This venture included Adam Shapiro, John Ripley, SYFS Parent Holdings, LLC, SYFS Holdings, LLC, SYFS Intermediate Holdings, LLC, Defendant Sequel, Defendant TSI Holdings, Defendant TSI of Alabama, Defendant TSI of Auldern, additional local companies that operated the youth facilities across the United States affiliated with the Defendants, and the staff employed to work at the youth facilities.

159.   The Defendants knew they were receiving some value from participating in the venture. Each facility received money for housing and caring for children at the facility. Defendants TSI of Auldern and TSI of Alabama received this money. Defendant TSI Holdings owned all the profits of Defendants TSI of Auldern and TSI of Alabama, and Defendant Sequel owned all the profits of Defendant TSI Holdings.

160.   The Sequel Venture violated 18 U.S.C. § 1589(a) as to the Plaintiffs and the Class.

a.   The Sequel Venture obtained labor or services from the Plaintiffs and the Class in their residential facilities. *See* paragraphs 44, 48-51, 52-70, 75, & 76-93.

b.   To obtain the Plaintiffs' labor or services, the Sequel Venture used means of serious harm, threats of serious harm, and/or a scheme, plan or pattern of seriously harmful tactics, including the methods outlined in paragraphs 52-70 and 76-90.

c.   At least Defendant TSI of Auldern, Defendant TSI of Alabama, and the staff at the residential facilities knew they were obtaining labor or services from Plaintiffs and the Class by illegal means because they knew that the children were being forced to serve as janitorial and/or groundskeeping staff, they knew the tactics employed to coerce the children to behave in certain ways, they knew the children were not being paid, and they knew the residential facilities did not hire adequate janitorial and/or groundskeeping services.

d.   The founder of the Sequel Venture, John Ripley, certainly knew of this violation as he had designed the Sequel Venture this way. In 2015, while John Ripley was the majority owner of Defendant Sequel, he explained to a group at the Merrick School of Business in Baltimore that, "[y]ou can make money in this business if you control staffing[.]"[7]

161.   The Defendants had constructive or actual knowledge that the Sequel Venture violated the TVPRA as to the Plaintiffs and the Class.

a.   Defendants TSI of Auldern and TSI of Alabama knew the Sequel Venture violated 18 U.S.C. § 1589(a) for all the reasons stated in paragraph 160.c.

b.   Defendant TSI of Auldern knew it was not paying the children for any of their labor or services and that it controlled the children, including forcing them to work, through threats of Refocus, Non-com, 5-foot, and withholding school credits.

c.   Defendant TSI of Alabama knew it was not paying the children for any of their labor or services and that it controlled the children, including forcing them to work, through making them stay in the Box and threats of extending their stay at the facility.

---

[7]Hannah Rappleye, Tyler Kinkade, and Kate Snow, *A profitable 'death trap': Sequel youth facilities raked in millions while accused of abusing children*, NBC News (Dec. 16, 2020), https://www.nbcnews.com/news/us-news/profitable-death-trap-sequel-youth-facilities-raked-millions-while-accused-n1251319.

d.  Defendant TSI of Auldern should have known the Sequel Venture violated 18 U.S.C. § 1589(a) because it did not purchase adequate janitorial services and was relying on the children for such services. Further, Defendant TSI of Auldern did not regularly purchase landscaping services and also relied on the children for such services.

e.  Defendant TSI of Alabama should have known the Sequel Venture violated 18 U.S.C. § 1589(a) because it did not pay for adequate janitorial services.

f.  Defendants Sequel and TSI Holdings should have known the Sequel Venture violated 18 U.S.C. § 1589(a) because they were aware that the residential facilities were not hiring adequate janitorial and/or groundskeeping staff. Further, Defendants Sequel and TSI Holdings knew the facilities in the Sequel Venture required the children to work and that the children were coerced into acquiescing to staff direction due to fear of repercussions such as extending their required stay, the Box, Non-com, 5-foot, losing school credits, and Refocus. Finally, John Ripley directed Defendant Sequel, and he admitted to designing the Sequel Venture to be understaffed in order to reduce costs and increase profits.

162.  Under the TVPRA and 18 U.S.C. § 2255, Plaintiffs and the Class are entitled to recover the actual damages they sustained or liquidated damages in the amount of $150,000.00.

163.  Under the TVPRA and 18 U.S.C. § 2255, Plaintiffs and the Class are entitled to recover additional damages, including, but not limited to:

a.  Punitive damages; and

b.  Attorney's and experts' fees and costs.

**COUNT 3**
**CIVIL ACTION UNDER 18 U.S.C. § 1595(a)**
**FOR HUMAN TRAFFICKING VIOLATION OF 18 U.S.C. § 1590(a)**
(Against Defendants TSI of Auldern and TSI of Alabama)
(On behalf of Plaintiffs and the Auldern and Sequel Montgomery Subclasses)

164.   The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

165.   This Cause of Action sets forth claims by Plaintiffs and members of the putative Auldern and Sequel Montgomery Subclasses against Defendants TSI of Auldern and TSI of Alabama under the civil remedies provision of the TVPRA, 18 U.S.C. § 1595(a), in that

a.   Plaintiffs and members of the putative subclasses are victims of violations of 18 U.S.C. § 1590(a); and

b.   Defendants TSI of Auldern and TSI of Alabama were perpetrators of the foregoing violations.

166.   Defendants TSI of Auldern and TSI of Alabama, directly or through their agents, knowingly recruited, harbored, transported, provided, and/or obtained by any means the labor or services of Plaintiffs and members of the putative Auldern and Sequel Montgomery Subclasses.

a.   Defendants TSI of Auldern and TSI of Alabama operated facilities that were represented as residential youth facilities for children with perceived behavioral, emotional, and physical challenges. Due to this representation, parents and state officials placed children in the care of Defendants TSI of Auldern and TSI of Alabama.

b.   Instead of providing help to these vulnerable children, Defendants TSI of Auldern and TSI of Alabama forced Plaintiffs and members of the putative Auldern and Sequel Montgomery Subclasses to provide janitorial and/or groundskeeping services without pay

through the use of serious harm and threats of serious harm as outlined in paragraphs 52-70 & 76-90.

      c.   Defendants TSI of Auldern and TSI of Alabama knew they were presenting their facilities as youth facilities in order to, among other goals, recruit, harbor, provide, and/or obtain the labor or services of the Plaintiffs and the putative Auldern and Sequel Montgomery Subclasses and to eliminate the need to pay for such labor or services.

167.   In carrying out out the actions described in paragraph 166, the Defendants TSI of Auldern and TSI of Alabama violated following provisions of Title 18, Chapter 77 of the United States Code:

      a.   Forced labor, violating 18 U.S.C. § 1589(a);

      b.   Benefiting financially from trafficking in persons, violating 18 U.S.C.§ 1593A;

      c.   Attempting to violate 18 U.S.C. §§ 1589(a), thereby violating 18 U.S.C. § 1594(a); and

      d.   Conspiring to violate 18 U.S.C. §§ 1589, thereby violating 18 U.S.C. § 1594(b).

168.   Under the TVPRA and 18 U.S.C. § 2255, Plaintiffs and the Auldern and Sequel Montgomery Subclasses are entitled to recover the actual damages they sustained or liquidated damages in the amount of $150,000.00.

169.   Under the TVPRA and 18 U.S.C. § 2255, Plaintiffs and the Auldern and Sequel Montgomery Subclasses are entitled to recover additional damages, including, but not limited to:

      a.   Punitive damages; and

      b.   Attorney's and experts' fees and costs.

**COUNT 4**
**CIVIL ACTION UNDER 18 U.S.C. § 1595(a)**
**FOR BENEFITTING FROM THE**
**HUMAN TRAFFICKING VIOLATION OF 18 U.S.C. § 1590(a)**
(Against All Defendants)
(on Behalf of Plaintiffs and the Class)

170.    The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

171.    This Cause of Action sets forth claims by Plaintiffs and the Class against all Defendants under the civil remedies provision of the TVPRA, 18 U.S.C. § 1595(a), in that

a.    Plaintiffs and the Class are victims of violations of 18 U.S.C. § 1590(a); and

b.    Defendants knowingly benefitted, financially or by receiving anything of value from participation in the Sequel Venture which Defendants knew or should have known engaged in the foregoing violations.

172.    The Defendants participated in the Sequel Venture.

a.    Defendants took part in a common undertaking or enterprise to provide shelter, educational services, and other care to minors with perceived behavioral, emotional, and physical challenges as outlined in paragraphs 44-51.

b.    This venture included Adam Shapiro, John Ripley, SYFS Parent Holdings, LLC, SYFS Holdings, LLC, SYFS Intermediate Holdings, LLC, Defendant Sequel, Defendant TSI Holdings, Defendant TSI of Alabama, Defendant TSI of Auldern, additional local companies that operated the youth facilities across the United States affiliated with the Defendants, and the staff employed to work at the youth facilities.

173.    The Defendants knew they were receiving some value from participating in the venture. Each residential facility received money for housing and caring for children at the facility. Defendants TSI of Auldern and TSI of Alabama received this money. Defendant TSI

Holdings owned all the profits from the residential facility operating companies like Defendants TSI of Auldern and TSI of Alabama, and Defendant Sequel owned all the profits of Defendant TSI Holdings.

174.    The Sequel Venture violated 18 U.S.C. § 1590(a) as to the Plaintiffs and the Class.

a.   The Sequel Venture knowingly recruited, harbored, transported, provided, or obtained by any means the Plaintiffs and Class for labor or services as outlined in paragraphs 44, 48-51, and 52-93.

b.   To obtain the Plaintiffs' and Class's labor or services, the Sequel Venture used the illegal methods outlined paragraphs 52-70 and 76-90.

c.   The Sequel Venture knew they were obtaining labor or services from Plaintiffs and the Class by illegal means as outlined in paragraphs 71-75 and 91-92.

d.   In carrying out the actions described in paragraphs 174.a-c, the Sequel Venture violated the following provisions of Title 18, Chapter 77 of the United States Code:

i.    Forced labor, violating 18 U.S.C. § 1589(a);

ii.   Benefiting financially from peonage, slavery, and trafficking in persons, violating 18 U.S.C. § 1593A;

iii.  Attempting to violate 18 U.S.C. § 1589(a), thereby violating 18 U.S.C. § 1594(a); and

iv.   Conspiring to violate 18 U.S.C. § 1589, thereby violating 18 U.S.C. § 1594(b).

175.    The Defendants had constructive or actual knowledge that the Sequel Venture violated the TVPRA as to the Plaintiffs and the Class.

a.   Defendants TSI of Auldern and TSI of Alabama knew the Sequel Venture violated 18 U.S.C. § 1590(a) for all the reasons stated in paragraph 160.c.

b.   Defendant TSI of Auldern knew it was not paying the children for any of their labor or services and that it controlled the children, including forcing them to work, through threats of Refocus, Non-com, 5-foot, and withholding school credits.

c.   Defendant TSI of Alabama knew it was not paying the children for any of their labor or services and that it controlled the children, including forcing them to work, through threats of extending their stay at the facility and placing them in the Box.

d.   Defendant TSI of Auldern should have known the Sequel Venture violated 18 U.S.C. § 1590(a) because it did not purchase adequate janitorial services and was relying on the children for such services. Further, Defendant TSI of Auldern did not regularly purchase adequate landscaping services and also relied on the children for such services.

e.   Defendant TSI of Alabama should have known the Sequel Venture violated 18 U.S.C. § 1590(a) because it did not pay for adequate janitorial services.

f.   Defendants Sequel and TSI Holdings should have known the Sequel Venture violated 18 U.S.C. § 1590(a) because they were aware that the residential facilities were not paying for adequate janitorial and/or groundskeeping services. Further, Defendants Sequel and TSI Holdings knew the facilities in the Sequel Venture required the children to work and that the children were coerced into acquiescing to staff direction due to fear of repercussions such as extending their required stay, the Box, Non-com, 5-foot, losing school credits, and Refocus. Finally, John Ripley directed Defendant Sequel, and he admitted to designing the Sequel Venture to be understaffed in order to reduce costs and increase profits.

176.    Under the TVPRA and 18 U.S.C. § 2255, Plaintiffs and the Class are entitled to recover the actual damages they sustained or liquidated damages in the amount of $150,000.00.

177.    Under the TVPRA and 18 U.S.C. § 2255, Plaintiffs and the Class are entitled to recover additional damages, including, but not limited to:

    a.   Punitive damages; and

    b.   Attorney's and experts' fees and costs.

**COUNT 5**
**CIVIL ACTION UNDER 18 U.S.C. § 1595**
**FOR ATTEMPTED FORCED LABOR IN VIOLATION OF 18 U.S.C. § 1594(a)**
(Against Defendants TSI of Auldern and TSI of Alabama)
(On Behalf of Plaintiffs and the Auldern and Sequel Montgomery Subclasses)

178.    The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

179.    This Cause of Action sets forth claims by Plaintiffs and members of the Auldern and Sequel Montgomery Subclasses against Defendants TSI of Auldern and TSI of Alabama under the civil remedies provision of the TVPRA, 18 U.S.C. § 1595(a), in that

    a.   Plaintiffs and the Auldern and Sequel Montgomery Subclass members are victims of violations of 18 U.S.C. § 1594(a); and

    b.   Defendants TSI of Auldern and TSI of Alabama were perpetrators of the foregoing violations.

180.    Defendants TSI of Auldern and TSI of Alabama intended to violate 18 U.S.C. § 1589.

    a.   Prior to enrolling students at Auldern Academy and Sequel Montgomery, Defendants TSI of Auldern and TSI of Alabama chose not to pay for adequate janitorial and/or groundskeeping services. They chose not to do so because they intended to use the children as free labor.

181.    Defendants TSI of Auldern and TSI of Alabama took a substantial step towards violating 18 U.S.C. § 1589.

a.   Defendants TSI of Auldern and TSI of Alabama enrolled students and required the Plaintiffs and the Auldern and Sequel Montgomery Subclass members to serve as janitorial and/or groundskeeping staff.

b.   Defendants TSI of Auldern and TSI of Alabama forced the Plaintiffs and the Auldern and Sequel Montgomery Subclass members to do this work through serious harm and threats of serious harm as outlined in paragraphs 52-70 and 76-90.

182.    Under the TVPRA, Plaintiffs and the Auldern and Sequel Montgomery Subclass members are entitled to recover compensatory and punitive damages in an amount to be proven at trial, including but not limited to:

a.   Compensation at the prevailing wage rate including all applicable overtime wages for the work done while employed at Defendants;

b.   Other compensatory damages;

c.   Compensation for all moneys paid during the recruitment process and in order to come to the Sequel facility, including travel expenses;

d.   Emotional and physical pain and suffering;

e.   Punitive damages; and

f.   Attorney's and experts' fees and costs as authorized by 18 U.S.C. § 1595.

**COUNT 6**
**CIVIL ACTION UNDER 18 U.S.C. § 1595**
**FOR CONSPIRACY TO FORCE LABOR IN VIOLATION OF 18 U.S.C. § 1594(b)**
(Against All Defendants)
(on Behalf of Plaintiffs and the Class)

183.    The Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

184.    This Cause of Action sets forth claims by Plaintiffs and the Class against all Defendants under the civil remedies provision of the TVPRA, 18 U.S.C. § 1595(a), in that

   a.   Plaintiffs and the Class are victims of violations of 18 U.S.C. § 1594(b); and

   b.   Defendants were perpetrators of the foregoing violations.

185.    Defendants conspired to violate 18 U.S.C. § 1589, thereby violating 18 U.S.C. § 1594(b).

186.    A conspiracy existed to force the children in the Defendants' custody to provide unpaid janitorial and groundskeeping services. Defendants embarked on the Sequel Venture with a goal of keeping staff levels low. To do so, they avoided hiring adequate janitorial and groundskeeping staff or paying for such services and, instead, used the children at their facilities as free labor. The Defendants put in place punitive measures that caused Plaintiffs and the putative class serious harm or threatened them with serious harm if they did not provide the unpaid labor.

187.    Defendants knew about this conspiracy. John Ripley, the founder, owner, and Director of Defendant Sequel spoke publicly about his tactic of reducing staffing costs. Defendants and those in the Sequel Venture structured their facilities and staffing to cut costs by coercing the children to perform unpaid labor. Because the Defendants structured the Sequel Venture this way, they knew about the conspiracy.

188.     After knowing about this conspiracy, Defendants voluntarily joined it. Defendants operated youth residential facilities that were understaffed, required the Plaintiffs and the Class to perform unpaid janitorial and groundskeeping work, and imposed abusive punitive measures for non adherence to the Defendants' direction as outlined in paragraphs 52-70 and 76-90.

189.     Under the TVPRA, Plaintiffs and the Class are entitled to recover compensatory and punitive damages in an amount to be proven at trial, including but not limited to:

     a.   Compensation at the prevailing wage rate including all applicable overtime wages for the work done while employed at Defendants;

     b.   Other compensatory damages;

     c.   Compensation for all moneys paid during the recruitment process and in order to come to the Sequel facility, including travel expenses;

     d.   Emotional and physical pain and suffering;

     e.   Punitive damages; and

     f.   Attorney's and experts' fees and costs as authorized by 18 U.S.C. § 1595.

## VI.
## CAUSES OF ACTION-STATE CLAIMS

### COUNT 7
### ASSAULT AND BATTERY
### (Against Defendant TSI of Alabama)
### (On behalf of Plaintiff Jane Doe)

190.     Ms. Doe realleges and incorporates by reference the foregoing allegations as if set forth fully here.

191.     Pursuant to Alabama Code § 6-2-8, Ms. Doe's claim has not expired.

192.     The male employee and the female social worker, as agents and employees of Defendant TSI of Alabama, made unwanted, inappropriate overtures toward Ms. Doe, and the

subsequent unwanted touching and sexual assault of Ms. Doe constitutes assault and battery under Alabama law.

193.    The male employee's and the female social worker's misconduct included the unwanted, inappropriate touching of Ms. Doe's person in the locked Sequel Montgomery facility in a rude or angry manner, so as to create in Ms. Doe's mind a well-founded fear of an imminent battery coupled with the apparent ability to effectuate that attempt if not prevented.

194.    The male employee's and the female social worker's conduct also included the touching of Ms. Doe in the locked Sequel Montgomery facility in a harmful or offensive manner.

195.    Defendant TSI of Alabama is vicariously liable for the male employee's and the female social worker's assault and battery of Ms. Doe because the male employee and the female social worker would not have been able to commit assaults and batteries on Ms. Doe but for the fact that they were employed by Defendant TSI of Alabama and working on Sequel Montgomery's  locked premises.

196.    Defendant TSI of Alabama is vicariously liable for the male employee's and the female social worker's assault and battery of Ms. Doe because Ms. Doe was specially vulnerable while in Defendant TSI of Alabama's custody or supervision, in that she was unable to defend herself in the locked Sequel Montgomery facility.

197.    As a direct and proximate result of the wrongful conduct of the Defendant alleged herein, Ms. Doe suffered physical injuries and continues to suffer from mental anguish, extreme emotional distress, and other resultant damages.

## COUNT 8
## INVASION OF PRIVACY
### (Against Defendant TSI of Alabama)
### (On behalf of Plaintiff Jane Doe)

198.    Ms. Doe realleges and incorporates by reference the foregoing allegations as if set forth fully here.

199.    Pursuant to Alabama Code § 6-2-8, Ms. Doe's claim has not expired.

200.    The male employee and the female social worker, as employees or agents of Defendant TSI of Alabama, did intentionally invade Ms. Doe's privacy when the male employee and the female social worker harassed and then sexually assaulted her in the locked Sequel Montgomery facility.

201.    The male employee's and the female social worker's conduct amounted to a physical intrusion into Ms. Doe's physical space, in that the male employee and the female social worker intentionally invaded Ms. Doe's privacy by repeatedly sexually assaulting her.

202.    In addition to their sexual assault of Ms. Doe, the male employee's and the female social worker's misconduct amounted to an invasion of Ms. Doe's emotional sanctum, in that they groomed Ms. Doe by cultivating entirely inappropriate relationships with her and serially committed batteries by repeatedly touching her in an unwanted and rude manner, through recurring instances of harassment and ultimately sexual assault.

203.    Defendant TSI of Alabama is vicariously liable for the male employee's and the female social worker's invasion of Ms. Doe's privacy because the male employee and the female social worker would not have been able to invade Ms. Doe's privacy but for the fact that they were employed by Defendant TSI of Alabama and working as employees of Defendant TSI of Alabama in the locked Sequel Montgomery facility at the time they invaded Ms. Doe's privacy.

204.    Defendant TSI of Alabama is vicariously liable for the male employee's and the female social worker's invasion of Ms. Doe's privacy because Ms. Doe was especially vulnerable while in Defendant TSI of Alabama's custody or supervision in the locked Sequel Montgomery facility, in that she was unable to defend herself or obtain help in her time of need.

205.    As a direct and proximate result of the wrongful conduct of the Defendant alleged herein, Ms. Doe suffered physical injuries and continues to suffer from mental anguish, extreme emotional distress, and other resultant damages.

### COUNT 9
### NEGLIGENCE AND/OR WANTONNESS
**(Against Defendant TSI of Alabama)**
**(On behalf of Plaintiff Jane Doe)**

206.    Ms. Doe realleges and incorporates by reference the foregoing allegations as if set forth fully here.

207.    Pursuant to Alabama Code § 6-2-8, Ms. Doe's claim has not expired.

208.    Defendant TSI of Alabama had a duty to provide for the safety and security of Ms. Doe and to protect Ms. Doe from foreseeable harm.

209.    As a direct and proximate result of Defendant TSI of Alabama's behavior by and through its agents or employees, including but not limited to the male employee and the female social worker, Defendant TSI of Alabama breached its duty to Ms. Doe, and she was caused to suffer personal injury, severe emotional distress, and other resultant damages.

210.    Defendant TSI of Alabama is also vicariously liable for the tortious acts of its agents and employees because no person would have been able to commit such misconduct against Ms. Doe but for the fact that they were employed by Defendant TSI of Alabama and working in the locked Sequel Montgomery facility at the time of the misconduct.

211.    As a direct and proximate result of Defendant TSI of Alabama's unreasonable conduct herein, Ms. Doe suffered physical injuries and continues to suffer from mental anguish, extreme emotional distress, and other resultant damages.

**COUNT 10**
**NEGLIGENCE AND/OR WANTONNESS**
**Premises Liability**
**(Against Defendant TSI of Alabama)**
**(On behalf of Plaintiff Jane Doe)**

212.    Ms. Doe realleges and incorporates by reference the foregoing allegations as if set forth fully here.

213.    Pursuant to Alabama Code § 6-2-8, Ms. Doe's claim has not expired.

214.    Defendant TSI of Alabama sought and established a special relationship with Ms. Doe, in that she was especially vulnerable while in the locked Sequel Montgomery facility, and Defendant TSI of Alabama held itself out as being capable of providing a safe and secure environment in which a child such as Ms. Doe would be safe in Defendant TSI of Alabama's custody or supervision.

215.    Defendant TSI of Alabama had a duty to keep the Sequel Montgomery facility premises reasonably safe and to protect the children placed at the Sequel Montgomery facility, including Ms. Doe, from foreseeable or preventable risks or harms.

216.    As part of the duty to keep the Sequel Montgomery facility premises safe, Defendant TSI of Alabama had a duty to protect Ms. Doe from the foreseeable criminal acts including preventing children from being in situations that make them vulnerable to victimization or exploitation.

217.    Defendant TSI of Alabama negligently, recklessly, or wantonly breached its duties to Ms. Doe by failing to maintain the Sequel Montgomery facility premises reasonably safe from foreseeable or preventable risks or harms.

218.    Ms. Doe was especially vulnerable due to her age and her emotional needs at the time the events that are the subject of this Complaint occurred.

219.    Ms. Doe, while placed at the locked Sequel Montgomery facility, was unable to protect herself from being groomed, harassed, and eventually abused.

220.    Defendant TSI of Alabama failed to act reasonably in maintaining its premises in a safe condition, and failed to warn Ms. Doe and her guardians of the dangers of entering the premises.

221.    Defendant TSI of Alabama is vicariously liable for the male employee's and female social worker's tortious acts because the male employee and female social worker would not have been able to complete these acts but for the fact that they were employed by Defendant TSI of Alabama and working at the locked Sequel Montgomery facility at the time of the misconduct.

222.    The harm Ms. Doe suffered was of a personal nature, entirely unrelated to her placement at the locked Sequel Montgomery facility, and was caused because Defendant TSI of Alabama unreasonably placed Ms. Doe  in a position of extreme vulnerability and exposed her to an unsafe environment and the male employee and female social worker.

223.    As a direct and proximate result of the wrongful conduct of the Defendant alleged herein, Ms. Doe suffered physical injuries and continues to suffer from mental anguish, extreme emotional distress, and other resultant damages.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, the named Plaintiffs and the putative class members and subclass members demand judgment against the Defendants and pray for the following relief:

1. Issuance of an Order certifying that this action may be maintained as a class action, appointing Plaintiffs and their counsel to represent the class and subclasses, and directing that reasonable notice of this action be given by Defendants to all putative class and subclass members;

2. Grant any reasonable request to amend Plaintiffs' Complaint to conform to the discovery and evidence obtained in the class action;

3. Award all available damages, including, but not limited to, compensatory and punitive damages in favor of the Plaintiffs and the putative class and subclasses;

4. Award Plaintiffs' their reasonable attorneys' fees pursuant to 18 U.S.C. § 1595 and 18 U.S.C. § 2255;

5. Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure and 18 U.S.C.§ 2255;

6. Award pre- and post-judgment interest in an amount according to the proof at trial; and

7. Grant the Plaintiffs and putative class and subclass members such further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ *Gregory Zarzaur*
Gregory Zarzaur (ASB-0759-E45Z)
Denise Wiginton (ASB-5905-D27W
Kelsie Overton (ASB-1791-F80L)
THE ZARZAUR LAW FIRM
2332 Second Avenue North
Birmingham, Alabama 35203

T: (205) 983-7985
E: gregory@zarzaur.com
  denise@zarzaur.com
  kelsie@zarzaur.com


Tommy James (ASB-3609-E66T)
Tommy James Law
4220 Cahaba Heights Court, Suite 210
Birmingham, AL 35243
T: 205-259-1725
E: tommy@tommyjameslaw.com