FILED

2025 Oct-14 PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANNA CLAIRE BATES AND JANE DOE,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:23-CV-01063-RDP** |
| | } | |
| **SEUQEL YOUTH AND FAMILY** | } | |
| **SERVICES, LLC, SEQUEL TSI** | } | |
| **HOLDINGS, LLC, BRIGHTER PATH** | } | |
| **ALABAMA, LLC, SEQUEL TSI OF** | } | |
| **AULDERN, LLC, AND JOHN RIPLEY,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Defendant John Ripley's Motion to Dismiss the Second Amended Complaint. (Doc. #55). The Motion has been fully briefed (Docs. # 55, 58, 60) and is ripe for decision. After careful review and for the following reasons, the Motion is due to be denied.

## I.    Background[1]

Plaintiffs Anna Claire Bates and Jane Doe filed their initial complaint in this action against Defendants Sequel TSI Holdings, LLC, Sequel TSI of Alabama, LLC, Sequel TSI of Auldern, LLC, and Sequel Youth and Family Services, LLC, on August 14, 2023. (Doc. # 1). On November 11, 2023, Plaintiffs filed their First Amended Complaint (Doc. #15), and on May 16, 2025, Plaintiffs filed their Second Amended Complaint (Doc. #44). Defendant Ripley was named as a Defendant in the Second Amended Complaint ("SAC"). (*Id.* at ¶¶ 33-36).

---

[1] In evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Found. Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). Accordingly, the well-pleaded facts set out herein are taken from Plaintiffs' Second Amended Complaint (Doc. # 44), and they are assumed true for purposes of ruling on Defendant Ripley's motion.

Plaintiffs' SAC asserts two causes of action against Defendant Ripley: Count 2, a civil action under 18 U.S.C § 1595(a) for benefiting from forced labor violations of 18 U.S.C. § 1589(a), and Count 4, a civil action under 18 U.S.C § 1595(a) for benefiting from the human trafficking violation of 18 U.S.C. § 1590(a). (*Id.* at ¶¶ 333-344, 350-361). For the purpose of analyzing this motion, the court focuses on Plaintiff's claims against Defendant Ripley.

## A.    Defendant Ripley's Involvement in the Sequel Venture

Defendant Ripley "was the co-founder of Defendant Sequel and served as its Chairman of the Board." (*Id.* at ¶ 33). Defendant Ripley became the majority owner of Defendant Sequel in 2014 and remained Chairman of its Board of Directors after it was purchased in 2017. (*Id.* at ¶¶ 34-35). In 2021, Defendant Ripley formed Vivant Behavioral Healthcare and purchased a majority of Defendant Sequel's operating facilities. (*Id.* at ¶ 36).

Defendant Ripley was a founder of the "Sequel Venture" within the "troubled teen industry," which began in 1999 with Sequel Management Services, LLC. (*Id.* at ¶¶ 112-114). The Sequel Venture was formed to provide "shelter, education services, and other care to minors with perceived behavioral, emotional, and physical challenges." (*Id.* at ¶ 112). The Sequel Venture acquired and sold various facilities and companies during the 2000s and 2010s. (*Id.* at ¶¶ 115-158). During that time period, Defendant Ripley remained in a leadership role in the Venture, including signing the biennial report for Venture LLCs and listing his home address as the principal office for the LLCs. (*Id.* at ¶ 123) ("Defendant Ripley signed the Biennial Report for Sequel Youth Services, LLC, as its manager, and the report listed his home address as the principal office of the LLC.") ("[Defendant Ripley] signed the Biennial Report for Sequel Youth Services of Clarinda, LLC, and Sequel Youth Services of Woodward, LLC as their manager.") (*Id.* at ¶ 125) (same for SequelCare of Iowa, LLC and Sequel CBS Holdings, LLC) (*Id.* at ¶ 126) (same for Sequel Youth

and Family Services, LLC, the manager of Sequel CBS Holdings, LLC/Sequel TSI Holdings, LLC).

In 2021, Defendant Ripley formed Vivant Behavioral Healthcare, LLC in Delaware "to buy back the facilities the Sequel Venture was operating." (*Id.* at ¶ 145). Defendant Sequel sold three facilities to Vivant Behavioral Healthcare "but much of Sequel's corporate management team were retained to operate the same businesses in these facilities." (*Id.* at ¶ 146).

Plaintiffs allege that Sequel Venture staff were charged with child abuse and children in Sequel Venture facilities were injured and even killed while Defendant Ripley was in leadership of the Venture. (*Id.* at ¶ 254-69). As part of its business strategy, the Sequel Venture "intentionally maintained 'low operating expenditures' by consistently understaffing all of its facilities." (*Id.* at ¶ 222) (citation omitted). Defendant Ripley explained that "you can . . . make money in this business if you control staffing." (*Id.* at ¶ 223) (citation omitted). Corporate leadership of the Sequel Venture, including Defendant Ripley, "exercised rigorous oversight and control of the individual facilities" within the Venture. (*Id.* at ¶ 246). "Defendant Sequel conducted weekly audits of all programs" and "established incident response protocol and critical incident review" procedures. (*Id.* at ¶ 228).

As a founder, owner, and shareholder, Defendant Ripley "benefited when the value of the Sequel Venture increased" and "received distributions or dividends." (*Id.* at ¶ 159). Defendant Ripley was also paid a founder's fee of $1.25 million in 2016 for his role in the creation of the Sequel Venture (*Id.*) and benefited reputationally from the Sequel Venture (*Id.* at ¶ 160). "Defendant Ripley was aware of all of these financial benefits." (*Id.* at ¶ 159).

### B.    Forced Labor Allegations Against the Sequel Venture

Plaintiffs allege that the Sequel Venture cut costs by using the children in its program as "free labor instead of paying for additional staff or services." (*Id.* at ¶ 168). "Sequel facilities nationwide employed force, threats of force, physical restraint, and threats of physical restraint to force the children to acquiesce to their demands, expectations, and instructions, including those involving the children's labor." (*Id.* at ¶ 177). "Children in the Sequel Venture's care were so fearful of . . . disciplinary measures that they acquiesced to perform labor for the Sequel Venture in an effort to avoid these disciplinary measures." (*Id.* at ¶ 207). In support, Plaintiffs point to numerous reports of physical, psychological, and emotional abuse against children in Sequel facilities across the United States. (*Id.* at 178-206).

Plaintiff Bates was enrolled at Auldern Academy, a facility within the Sequel Venture, from April 2016 to June 2017. (*Id.* at ¶¶ 7, 16). Plaintiff Bates alleges that she and the other students at Auldern Academy were forced to "clean and maintain the entire campus," including the bathrooms, dining hall, activities building, dormitories, common area, and therapy annex. (*Id.* at ¶¶ 46-47). They were also required to do landscaping work and manual labor, such as building a cabin and carrying boulders to line a path. (*Id.* at ¶ 48). If the students did not participate in the labor, they could be punished through the use of measures like "Refocus." (*Id.* at ¶¶ 49-60). When students were put on Refocus, they were forced to "run up a hill carrying rocks, sleep on the floor . . . with no blanket or pillow, eat only plain oatmeal and rice and beans, . . . and walk six miles." (*Id.* at ¶ 54). Students could also be placed on "Non-com," under which they were "not permitted to communicate with anyone other than their therapist during their weekly one-on-one session." (*Id.* at ¶ 61). Plaintiff Bates claims she was forced to work for no pay, which benefited Defendants. (*Id.* at ¶ 16).

4

Plaintiff Doe was placed at Sequel Montgomery by the State of Alabama from December 2014 to Fall 2015. (*Id.* at ¶¶ 6, 18). Plaintiff Doe and other students in Sequel Montgomery were required to "sweep, mop, and wipe down the day room, hallways, and lunch room," "clean the group restroom," "clean the back porch," and "empty all trash cans." (*Id.* at ¶ 87). They were also required to deep clean the entire campus weekly. (*Id.* at ¶¶ 88-91). If the students failed to comply with staff orders, they were disciplined. (*Id.* at ¶ 96). This discipline included having the length of the student's required placement extended (*Id.* at ¶¶ 98-99), not being allowed to interact with peers (*Id.* at ¶ 100), and being locked in a seclusion room for hours at a time (*Id.* at ¶ 102). Plaintiff Doe claims she was forced to work for no pay to the benefit of Defendants. (*Id.* at ¶¶ 18, 108).

## II.    Legal Standards

Because Defendant Ripley's motion is filed based on the Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), the court recounts the standard of review regarding each of those rules.

### A.    Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), "[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). After the defendant challenges jurisdiction with affidavit evidence in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless [the defendant's] affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). If, however, "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.*

B.    **Rules 8 and 12(b)(6)**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)).

That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## III.    Analysis

Plaintiffs' SAC brings two causes of action against Defendant Ripley: Count 2, a civil action under 18 U.S.C § 1595(a) for benefiting from the forced labor violation of 18 U.S.C. § 1589(a), and Count 4, a civil action under 18 U.S.C § 1595(a) for benefiting from the human trafficking violation of 18 U.S.C. § 1590(a). (*Id.* at ¶¶ 333-344, 350-361).

### A.    This court has personal jurisdiction over Defendant Ripley.

Rule 4(k)(1) states that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." Fed. R. Civ P. 4(k)(1). The Eleventh Circuit has found that "[w]hen a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *Kammona v. Onteco Corp.*, 587 F. App'x 575, 579 (11th Cir. 2014) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)). Title 18 U.S.C. § 2255 provides:

> (a) In general.--Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court . . . .
> (c)(2) Service of process.--In an action brought under subsection (a), process may be served in any district in which the defendant--
> > (A) is an inhabitant; or
> > (B) may be found.

18 U.S.C. § 2255(a), (c). Section 1589 of the TVPRA makes it a crime to knowingly provide or obtain forced labor or benefit financially "from participation in a venture . . . providing or obtaining" forced labor. *Id.* § 1589. And § 1590 makes it a crime to traffic any person for "labor or services in violation of this chapter," including forced labor. *Id.* § 1590. Section 1595 provides a civil remedy for violations of §§ 1589 and 1590, and § 2255(a) "specifically authorizes victims who were minors at the time certain . . . offenses were committed to bring civil actions for such criminal violations." *Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136, 1173 (N.D. Ala. 2022).

Plaintiffs' civil claims against Defendant Ripley are based on 18 U.S.C § 1595(a). Plaintiffs assert that this court has personal jurisdiction over all Defendants based on Rule 4(k)(1)(C) and the nationwide service of process provision of 18 U.S.C. § 2255 because Plaintiffs were minors at the time of their trafficking and assert claims as victims of 18 U.S.C. §§ 1589 and 1590. (*Id.* at ¶ 37). Further, Plaintiffs assert that the "statutory nationwide service of process provision provides a basis for nationwide personal jurisdiction over the Defendants" and that "the [c]ourt can look to the entire United States to determine if minimum contacts exist." (*Id.* at ¶ 38). Thus, because Defendant Ripley is "a resident and citizen of the United States" and owned businesses within the United States, Defendant Ripley has purposefully established minimum contacts with the United States. (*Id.* at ¶ 39).

Defendant Ripley argues that because 18 U.S.C. § 2255 does not include § 1595 in its list of enumerated statutes, § 2255 does not authorize nationwide service of process for civil claims brought under § 1595(a). (Doc. # 55 at 6-7).

The Honorable L. Scott Coogler, formerly of this court, addressed nationwide service of process under § 2255 in *Doe #1 v. MG Freesites*. 676 F. Supp. 3d at 1171-75. In *MG Freesites*, one of the Plaintiffs asserted claims under the TVPRA, 18 U.S.C. §§ 1591 and 1595, and the

federal child pornography statute, 18 U.S.C. §§ 2252 and 2252A. *Id.* at 1172. The Defendants moved to dismiss Plaintiff's claims under Rule 12(b)(2) and the Supreme Court's decision in *Bristol-Myers Squibb Company v. Superior Court of California*, 582 U.S. 255 (2017), alleging that the court did not have personal jurisdiction over them. *Id.* The court found that *Bristol-Myers* did not apply because Plaintiff asserted "federal statutory claims under 18 U.S.C. §§ 1591, 2252, and 2252A, which, through the operation of 18 U.S.C. § 2255, provide for nationwide service of process." *Id.* Thus, "the personal jurisdiction analysis is governed by the Fifth Amendment's Due Process Clause and [boils down to] whether the Defendants have sufficient contacts with the United States and not specifically with Alabama." *Id.*

While the list of statutes enumerated in § 2255(a) does not include § 1595(a), Plaintiffs have brought claims under § 1595(a) for alleged violations of §§ 1589 and 1590, which are listed in § 2255. Since Plaintiffs allege that while they were minors, they were "victim[s] of a violation of section 1589 [and] 1590" in their suit under § 1595(a), § 2255(a) authorizes them to "sue in any appropriate United States District Court," including this court. 18 U.S.C. § 2255(a); *see Doe v. MG Freesites, LTD*, No. 7:21-CV-00220-LSC, 2024 WL 5339485 at *8 (N.D. Ala. Dec. 19, 2024) (explaining that § 1595(a) "creates an adjunct civil cause of action" for victims of a TVPRA violation). Any other conclusion would run contrary to the intent of the nationwide service of process provision, since § 1595 provides the civil cause of action for violations of §§ 1589 and 1590. Thus, Plaintiffs' claims, "through the operation of 18 U.S.C. § 2255, provide for nationwide service of process." *MG Freesites,* 676 F. Supp. 3d at 1172.

Defendant Ripley is correct that he does not have sufficient minimum contacts with Alabama. Defendant Ripley has been a resident of Virginia for 27 years and has never been a resident of Alabama, owned Alabama real estate, had an Alabama bank account, voted in Alabama,

or held an Alabama driver's license. (Doc. # 55-1 at 1-2). But, because § 2255 explicitly provides for nationwide service of process, the question is not whether Defendant Ripley has sufficient contacts with Alabama. Rather, the question is whether Defendant Ripley has sufficient contacts with the United States. And, as a Virginia resident for 27 years who intends to remain there indefinitely (Doc. # 55-1 at 1), the court finds that Defendant Ripley has sufficient minimum contacts with the United States for this court to exercise jurisdiction over him in this case.

Defendant Ripley also contends that, because he was not a perpetrator and rather an alleged beneficiary of the alleged crimes, 18 U.S.C. § 2255 does not apply to him. (*Id.* at 6-7). The court is not persuaded. Nothing in § 2255 limits claims under the statue to only perpetrators. *See MG Freesites,* 676 F. Supp. 3d at 1175 n.5 (noting that under § 2255, a victim may choose to recover liquidated damages for a *beneficiary liability* claim). In fact, § 1595 specifically includes those who "knowingly benefit . . . from participation in a venture" engaged in forced labor or trafficking. 18 U.S.C. § 1595.

For all the above reasons, this court has personal jurisdiction over Defendant Ripley based on the nationwide service of process provision applicable to Plaintiffs' claims.

**B.    Plaintiffs have stated plausible claims against Defendant Ripley.**

To state a claim for beneficiary liability under the TVPRA, 18 U.S.C. § 1595, Plaintiffs must plausibly allege that Defendant Ripley "(1) knowingly benefited (2) from participating in a venture; (3) that venture violated the TVPRA as to the [Plaintiffs]; and (4) the franchisors knew or should have known that the venture violated the TVPRA as to the [Plaintiffs]." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021). After careful review, as explained below, the

court finds that Plaintiffs have stated sufficient facts to allege plausible TVPRA beneficiary liability claims against Defendant Ripley.

### 1.    Plaintiffs have plausibly alleged Defendant Ripley knowingly benefited.

First, to allege that Defendant Ripley "knowingly benefited" from the violations, Plaintiffs must plead that Defendant Ripley "knew [he] was receiving some value from participating in the alleged venture." *Id.* at 724. Here, Plaintiffs contend that Defendant Ripley "founded the Sequel Venture with Sequel Management Services, L.L.C. in 1999" (Doc. # 44 at ¶ 114) and served in leadership roles for various entities within the Sequel Venture (*Id.* at ¶¶ 123, 125-26, 128, 130-32, 134-39). Plaintiffs also claim that in 2021, Defendant Ripley formed Vivant Behavioral Healthcare to buy back the facilities the Sequel Venture sold between 2020 and 2022. (*Id.* at ¶¶ 144-46). Further, Plaintiffs allege that from 1999, Defendant Ripley "benefited when the value of the Sequel Venture increased" as a partial owner, "received distributions or dividends" as a shareholder of entities within the Sequel Venture, "was paid a founder's fee" of $1.25 million "for his role in the creation of the Sequel Venture," and benefited reputationally from the Sequel Venture. (*Id.* at ¶¶ 159-60). Because "Defendant Ripley was aware of all of these financial benefits" (*Id.* at ¶ 159), Plaintiffs have plausibly alleged that he "knowingly benefited" from his participation in the Sequel Venture. *Red Roof Inns, Inc.*, 21 F.4th at 724-25.

### 2.    Plaintiffs have plausibly alleged Defendant Ripley participated in the Sequel Venture.

Next, "participation in a venture" requires that Plaintiffs allege that Defendant Ripley "took part in a common undertaking or enterprise involving risk and potential profit." *Red Roof Inns, Inc.*, 21 F.4th at 725. "We begin with the venture [Plaintiffs] say that [Defendant Ripley] participated in." *Id.* Here, Plaintiffs allege that Defendant Ripley and others were engaged in a venture to provide "shelter, educational services, and other care to minors with perceived

behavioral, emotional, and physical challenges." (Doc. # 44 at ¶ 112). Plaintiffs claim that Defendant Ripley participated in the alleged Sequel Venture as a founder and executive. (*Id.* at ¶¶114-15, 123, 125, 126, 128, 130-32, 134-39, 142, 145-46). Plaintiffs also assert that Defendant Ripley profited from his participation in the venture, as explained above. Thus, because Plaintiffs have alleged that Defendant Ripley "took part in a common undertaking or enterprise involving risk and potential profit," *Red Roof Inns, Inc.*, 21 F.4th at 725, Plaintiffs have plausibly alleged that Defendant Ripley participated in the Sequel Venture.

### 3. Plaintiffs have plausibly alleged the Sequel Venture violated the TVPRA.

Third, a "venture that violated the TVPRA" as to the Plaintiffs requires Plaintiffs to "plead sufficient facts to plausibly allege that the venture in which [Defendant Ripley] participated committed [a TVPRA crime] against them." *Red Roof Inns, Inc.*, 21 F.4th at 725. In this case, Plaintiffs allege that the Sequel Venture violated two provisions of the TVPRA, 18 U.S.C §§ 1589 and 1590. (Doc. # 44 at ¶¶ 333-44, 350-61). Section 1589 makes it a crime to knowingly provide or obtain forced labor or benefit financially "from participation in a venture . . . providing or obtaining" forced labor. 18 U.S.C. § 1589. And § 1590 makes it a crime to traffic any person for "labor or services in violation of this chapter," including forced labor. *Id.* § 1590. Plaintiffs have plausibly alleged, and Defendant Ripley does not seem to contest, that residents within Sequel facilities were so fearful of punishment and threats of punishment that they performed forced labor when instructed to do so. (Doc. # 44 at ¶ 170-207). Thus, Plaintiffs have plausibly alleged that the Sequel Venture violated the TVPRA.

### 4. Plaintiffs have plausibly alleged Defendant Ripley knew the Sequel Venture violated the TVPRA.

Finally, Plaintiffs must allege that Defendant Ripley had "either actual or constructive knowledge that the venture in which [he] participated and from which [he] benefited violated the

TVPRA" as to Plaintiffs. *Red Roof Inns, Inc.*, 21 F.4th at 725. The Eleventh Circuit has made clear that a defendant may be held liable under the TVPRA if they have either actual or constructive knowledge that the venture in which they participated and from which they benefited violated the TVPRA. *Id.* "Actual knowledge requires '[a]n awareness or understanding of a fact or circumstance.'" *Id.* (quoting *Knowledge*, Black's Law Dictionary (11th ed. 2019)). On the other hand, constructive knowledge is "that knowledge which 'one using reasonable care or diligence should have.'" *Id.* (quoting *Constructive Knowledge*, Black's Law Dictionary (11th ed. 2019)). Thus, to state a claim under the TVPRA, Plaintiffs must plausibly allege that Defendant Ripley had (at least) constructive knowledge that the venture in which he participated and from which he benefited violated the TVPRA as to Plaintiffs. *See J.C. v. I Shiri Khodiyar, LLC*, 624 F. Supp. 3d 1307, 1319 (N.D. Ga. 2022).

Dismissal of a Section 1595 claim based on lack of knowledge is appropriate when a plaintiff offers "no instances that would have prompted a reasonable person or company to be aware of or even suspect" the possibility of a TVPRA violation. *See Cassone v. Austin Chronicle Corp.*, 2024 WL 2031713, at *9 (W.D. Tex. May 7, 2024) (finding that a complaint failed to meet the requisite constructive knowledge requirement because the complaint did not directly plead that the defendant should have known of the venture). But, courts within this circuit have found that constructive knowledge was properly pled even if a complaint cited only to "red flags" that supported open signs of a TVPRA violation. *See A.D. v. Choice Hotels Int., Inc.*, 2023 WL 5510090, at *5 (M.D. Fla. 2023) (finding that "red flags" at a hotel including payments in cash, requests for sheet changes, and the victim's physical appearance should have made employees and staff aware of a TVPRA trafficking violation); *A.D. v. Best Western Int., Inc.*, 2023 WL 5510064, at *5 (M.D. Fla. 2023) (same). Thus, "an overt or direct act" that would put the defendant on notice

of a TVPRA violation is not required to meet the knowledge requirement. *Best Western Int., Inc.*, 2023 WL 5510064, at *5.

Plaintiffs allege that the Sequel Venture "intentionally maintained 'low operating expenditures' by consistently understaffing all of its facilities." (Doc. # 44 at ¶ 222) (citation omitted). This allegation is supported by a quote from Defendant Ripley, who explained that "you can . . . make money in this business if you control staffing." (*Id.* at ¶ 223) (citation omitted). Plaintiffs also allege that the corporate leadership of the Sequel Venture, including Defendant Ripley, "exercised rigorous oversight and control of the individual facilities" over the venture. (*Id.* at ¶ 246). For example, "Defendant Sequel conducted weekly audits of all programs" and "established incident response protocol and critical incident review process." (*Id.* at ¶ 228). Additionally, Plaintiffs allege that Sequel Venture staff were being charged with child abuse and children in Sequel Venture facilities were injured and even killed while Defendant Ripley was in leadership of the Venture. (*Id.* at ¶¶ 254-69).

"Knowledge and other conditions of a person's mind may be alleged generally." *S.Y. v. Marriott Int., Inc.*, 2021 WL 2003103, at *5 (M.D. Fla. 2021) (citing Fed. R. Civ. P. 9(b) and *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1215 (11th Cir. 2018)). The quote from Defendant Ripley, combined with Plaintiffs' allegations regarding controlling staffing and "rigorous oversight" from corporate leadership, including Defendant Ripley, is enough to plausibly allege that Defendant Ripley had at least constructive knowledge that minor students were being forced to perform labor at facilities within the Sequel Venture.

### C.    Plaintiffs' SAC is not a shotgun pleading under Federal Rule of Civil Procedure 8.

Defendant Ripley claims that Plaintiff's SAC is a shotgun pleading. The Eleventh Circuit has identified four types of shotgun pleadings:

The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (footnotes omitted). District courts retain the authority to dismiss complaints on shotgun pleading grounds. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). But the court must grant a plaintiff at least one chance to remedy such shotgun pleading deficiencies *sua sponte* before dismissing an action on shotgun pleading grounds. *Id.* "In these cases, even if the parties do not request it, the district court 'should strike the complaint and instruct counsel to replead the case—if counsel [can] in good faith make the representations required by Fed. R. Civ. P. 11(b)." *Id.* (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1133 n.113 (11th Cir. 2001) ).

Plaintiffs' four counts do not "adopt[] the allegations of all preceding counts." *Weiland*, 792 F.3d at 1321-23. Plaintiffs' SAC separates "into a different count each cause of action or claim for relief." *Id.* Finally, Plaintiffs' multiple claims against multiple defendants specify "which of the defendants are responsible for which acts or omissions [and] which of the defendants the claim is brought against." *Id.* For example, Plaintiffs have brought only two of its four claims against Defendant Ripley. (Doc. # 44 at ¶¶ 333-44, 350-61). Within each of those claims, Plaintiffs specify

how Defendant Ripley was involved in and benefited from the venture and what he knew or should

have known about the venture. (*Id.*) Thus, Plaintiffs' SAC is not a shotgun pleading.

**IV.**     **Conclusion**

      After careful review, Defendant Ripley's Motion to Dismiss is due to be denied. An order

consistent with this memorandum opinion will be entered.

      **DONE** and **ORDERED** this October 14, 2025.


                                        _____

                                        **R. DAVID PROCTOR**

                                        CHIEF U.S. DISTRICT JUDGE